The next case is United States v. Matos Good morning, your honors. My name is Daniel Nutter and I represent Mr. Samuel Matos. On February 8th of last year, this court ordered the parties to address whether the district court erred in determining Mr. Matos' criminal history score. The parties had expected at the time of the plea hearing that he would be in Category 2, which as you know is 2 to 3 points. Instead, the district court assessed an incredible 19 criminal history points due to, we assert, a misinterpretation of Section 4A1.2 of the guidelines. Contrary to the district court's findings, it's apparent that in sentencing Mr. Matos to time served and immediate parole on each of the five Pennsylvania convictions at issue here. The Pennsylvania state judge imposed what the guidelines understand to be a suspended sentence in which only the time served prior to suspension of the sentence is used in determining criminal history points. Indeed, as this court explained in Ramirez, the guidelines' purpose of national uniformity requires a district court to disregard a particular state's idiosyncratic choice of language and instead consider the substantive effect of the state court's sentence. The operative distinction for guidelines' purposes is whether the alternative to incarceration is imposed by the original sentencing judge, as it was here, or whether it's imposed by subsequent executive authority, which would be a warden, or a parole board, or a governor issuing a pardon. None of these things have any relevance as far as what the guidelines calculus. When a judge does it, it has relevance. And that's what this court held in Hernandez, for example. You're saying that we should treat it as a suspension of the sentence, essentially, and that the court should have counted only the time that was spent incarcerated. Is that how it works? Exactly so. And especially in this case in Pennsylvania, because as this Fourth Circuit summary order in Gonzalez-Ferreta's notes, there isn't even an option on the judgment and commitment form in Pennsylvania to mark suspended sentence. This is how they do it. They call it proof. Isn't it? I mean, there was a plea agreement here and an appeal waiver. The plea agreement said, until the probation office has fully investigated the defendant's criminal history, it's not possible to predict with certainty what that criminal history will be at the plea proceeding. The government's attorney made clear this is an estimate that we have in the agreement. It might prove to be different. So why is this a circumstance in which the appeal waiver shouldn't be given force? Okay. Well, obviously there's been a lot of briefing about whether a miscarriage of justice exception should apply. But I'd like to suggest maybe that this court may not even have to reach that issue because when you look at the cases as to why and how this court enforces appeal waivers, it's clear that it does so for two reasons. The first is, of course, to uphold the government's clear interest in avoiding unnecessary litigations, burdensome litigation. And that's set out right in Gomez-Perez and Rosa. The other reason is an equitable issue, a deterrent issue against defendants who, if they've bargained for a particular benefit of the plea agreement, not to be able to turn around and then breach the agreement. I would suggest that neither of those situations applies here because Mr. Matos, by which I really mean myself, did exactly what Gomez-Perez requires. I filed an Anders brief. I moved to withdraw his counsel, and exactly as required in Gomez-Perez. The court then looked at it. The motion panel looked at it. They said, well, actually, there is this issue, and we're going to direct the parties to brief it. So the government has had to do this briefing, but not because of what Mr. Matos has done. And meanwhile, Mr. Matos has not turned around and breached his plea agreement. Let's just assume for the sake of argument that the motions panel was wrong because they are not deciding the merits. We are. I guess that's the question is why would we not enforce it? You're saying that if the court goes ahead and makes everybody brief it, then all of a sudden an appeals waiver has lost its value to the government, and therefore it's not enforceable? Because I would think the value to the government is not simply to save them the briefing, although certainly that is one of the bargain for benefits that they sought, but also to get affirmance of the sentence. I mean, you can't think that it's not also a guarantee of the result that they're seeking, but also it's only of the process to save them extra briefing on their way to presumably, on their view, winning in the court. Well, the two brief responses I'd give you to that, Judge Nardini, is first is that the saving the government the burden is usually what this court has specifically identified in its prior cases as that reason. I would suggest, I would not disagree with you that the government has some interest in preserving a decision, but I would suggest that that interest is at its minimum where there is at least significant reason to consider or to believe that that decision may be wrong. Of course, the government uniquely has to serve the public interest and not merely simply try to win at all costs. But, so they have... How often do we invalidate contracts because we don't think it matters much to the party invoking the contract? Well, impossibility of performing the contract is always, at common law, been a reason to not enforce the contract. And again, I think this falls very clearly under, again, if you feel that the overwhelming goal is avoiding having to write like this 68-page brief that they've already written, then I would suggest that at this point it is impossible to give them the bargain that they have contracted for by asserting the appeal waiver other than just this little bit that's about upholding a potentially incorrect... About winning the case? You don't think that matters to them under the contract? They don't care about winning the case anymore? I think that their interest in having... Well, and again, I would take a step... I think it's very significant that the government thought that... Not only my client, but the government believed the criminal history category of 2 was appropriate here because the government needs to plea bargain in any number of additional cases. Defendants need to. And if you don't know whether 2 or 6 is the correct criminal history, it makes a huge, massive difference in what the sentencing expectations of the parties are and the value... But that uncertainty is something that the parties are free to bargain against, right? So that if you think there's certainty, then one party may be willing to give or take or demand a little bit more in the contract negotiation. Here we have a plea agreement that said basically regardless of what happens, the defendant is willing to waive the right to appeal so long as the sentence is not whatever it is, 135 months or whatever the number was. So it seems to me that the parties are in a perfect position to decide how much uncertainty they're willing to accept and enter the bargain or not. He could have pled straight to the indictment, right? Well, respectfully, Your Honor, I want to push back a little. Well, first of all, he could not really have pled to the indictment. I can't really get into that quite as much as I would like to, but it has to do with the materials that you know why I'm saying that. But for the other part, I want to push back a little bit against this notion that really comes out of this 2004 case, Gramlich, which is the one where it really talks about the use of offering the appeal waiver as a bargaining chip and the extent to which this really is a bargain for benefit to which we need to hold the defendant. At the time that Gramlich and these earlier cases were decided, part of the reason that they were decided is that the government was representing to the court that these appeal waivers are extremely rare and there's language that I have here in my notes here. What year was this? Well, Gramlich was 2004, but in Rosa... In my experience, these were everywhere in 2004, so I don't know who would have been representing that or who would have been under that misapprehension. I've been around for not that long, but I've certainly been around that long and they were par for the course. Well, Rosa, which was 99, this is page 100 of the Rosa opinion, you have the government asserting to the court that the waivers were being sought by the government only in those cases where the defendant has received a particularly favourable deal, favourable in terms exceeding those provided for in an ordinary plea bargain, unquote. And when we're talking about sort of the benefit of the bargain, I kind of feel that the government has obtained this great benefit by this language at the end of the syllogism in the Gramlich case, in which they say we're going to have these waivers be presumptively enforceable, and the reason being because of this bargaining chip that the defendant has taken and essentially offered to the government, whereas what we know certainly now, you know, in 2025, is that these appeal waiver provisions are adhesion clauses in contracts that the government is drafting in every case. And the government, it seems to me, is the one trying to get the unfair benefit of this language from these old cases, but not doing what they were doing at that time, which was essentially only seeking these appeal waivers in particular cases. I realize I'm over my time, and we haven't even talked about the miscarriage of justice exception issue. Do you want to address questions to me about that? Let me ask one question about that. If we were to entertain your argument and say, you know, maybe there should be a miscarriage of justice exception, how would we... They seem to vary a lot from circuit to circuit based on the briefing that both of you have given us. How would we define that exception so that it wouldn't swallow the rule, essentially? Yeah, so I can offer you two... In a case like this, which is ultimately about a sentencing guidelines calculation. I can give you two alternatives, one which I think is the sort of easiest, but may be a little vaguer, and the other which gets a little bit more into the weeds in some of these cases. I'll try offering you the easiest one first with the hope that you like that one. Which is, instead of actually recognizing this whole exception, you maybe do sort of what an attorney did in this case, what I did, not to pat myself on the back, is that you file an Anders brief. But if you still have an issue that maybe presents the kind of issue that really is going to be exceptionally important, you flag that in the Anders brief, and then the motions panel has an opportunity to either say, no, we're upholding the waiver and that's gone, the government doesn't need to write any response at all, so there's no burden on the government besides the ordinary burden. But if this is one of the situations where additional briefing might be important for one of the several conditions that the court considers, such as the important independent institutional role that the court has, especially in guidelines issues, then it can do exactly what it did in this case. And therefore, the court, again, doesn't need to develop a whole different procedure. It's already baked into what's required under Gomez-Perez and Anders. That's what I would say is the easy way. The somewhat more difficult one, if you want to really narrow it down, is that in looking at both this court's case law and the case law of the other circuits, you're right that there are a multiplicity of different approaches, but there are two pillars that I think are clear to a greater or lesser extent in all these cases. One is independent public interest, which includes, though is not limited to, but largely is the independent interest the judiciary has in adjudicating certain issues and also ensuring uniformity among the lower court decisions. Notably, two of the lower courts in this circuit have found a miscarriage of justice exception. And that is really shown in the Tenth Circuit, where they actually just take from the fourth prong of the plain error analysis, which is, of course, the extent to which a question concerns the fairness and integrity of judicial proceedings. And the other main sort of pillar, I'd say, is the equity pillar, because equity, again, has always been a limitation on the enforcement of a contract under law, and that mostly considers issues of fundamental fairness and the expectation of the parties. And that's more represented in sort of the balancing test that the First and Third Circuits do. But it's also what this court says. In cases like Reddy, you know, which talks about how they might invalidate a waiver where it, quote, implicates institutional and societal values that transcend the individual's interests. And again, that's going to the first of these prongs. You have the Rigi and Lajeunesse cases, which, again, are focusing then a little bit more on these equitable concerns and how they push back. So what I would say is you have two pillars, and one of the reasons why there's a lot of confusion when you just use miscarriage of justice, which I agree totally with the government, is not a very helpful phrase in telling you what the substance is. But what the actual substance is are these two things, public interest and equity. Thank you. We'll hear from the government. Good morning. May it please the Court, Thomas Sutcliffe on behalf of the United States. This court should first dismiss the defendant's challenges to his term of imprisonment on the grounds that they are both precluded by the appeal waiver provision in his plea agreement. Now, just now the defendant opens by raising an argument that I don't really think is articulated in his opening brief, which is essentially this claim that once the government is required to brief the merits of an appeal, then it has effectively lost any benefit from the plea agreement. Again, this was not an issue presented in the opening brief, but regardless, as the court correctly indicated, the government's interests here are not purely procedural. They also go to its interests in preserving the integrity of the conviction and the sentence. You have already lost part of what you bargained for, in your view. Your Honor, certainly we had to brief it, so in that respect, to the extent this protects a time interest or a resources issue, I suppose part of that interest has been devalued, but not the interest in preserving the integrity of the sentence here. You would have had to brief these supervised release conditions anyway, right? That's correct. We're not arguing that those challenges are bargained for. So one way, maybe it would have been a skinnier red brief, but it would have been a red brief nonetheless. I think that's correct, Your Honor, yes. I think the court also has to be mindful of how this is going to play out in future cases. There's a need for a deterrent value here, and if every appellant is of the view that if they simply just file an appeal and maybe an annuars brief will get rejected, or maybe there'll be an order to brief issues, I think that further devalues these appeal waivers because it gives the government even less certainty when it comes time to negotiate one of these provisions in a plea agreement. I think one of the other arguments that the defendant just raised, these appeal waivers have benefits to defendants regardless of how frequently they're imposed and regardless of whether their frequency has increased over time. As this court has repeatedly stated, not just back in 2004, but which I think it has continued to state, is this gives defendants a bargaining chip, a bargaining chip they may not otherwise have, particularly given in situations where the government's proof is strong. And whether or not this is common in plea agreements, whether or not it's rare, it is something that defendants can offer up as part of the plea negotiation process in exchange for concessions, which they're free to negotiate on a case-by-case basis. And again, the more exceptions that are added to that, whether that be a miscarriage of justice exception or anything else, it reduces the level of certainty that the government has as a result of that and it makes it less valuable as a bargaining chip in every single case. Now, with respect to a miscarriage of justice exception, I do agree that there is a problem here articulating what exactly it is. If we look at the other circuits that have framed it as terms of a miscarriage of justice, miscarriage of justice is less a doctrine and more a label that's applied to a variety of different scenarios where courts have varying exceptions to appeal waivers and forcibility. In many circuits, it's just a label that's used to articulate different types of exceptions, many of which this court has already recognized as being exceptions. So in many cases, adopting the law in other circuits I don't think would meaningly affect this court's jurisprudence. But ultimately, I don't think this court has to go down the road of deciding whether it wants to adopt a new exception with that label because however we define it here, no miscarriage of justice occurred. What we have here is a garden-variety claim of guidelines error, a claim that the district court miscalculated the criminal history. This court has said multiple times that a claim of guidelines error is not enough to avoid an appeal waiver. And those holdings go back even to a period where the guidelines were mandatory. And that appears to be the same consensus among multiple other circuits, that also purport to have adopted some sort of miscarriage exception. Now the defendant tries very hard to make it seem as though the error that occurred here is somehow egregious in some respect, but there's simply no indication here that that's the case. So for example, there's no controlling law in this circuit that weighs in on the defendant's interpretation of the operative guideline provision here, that being 4A1.2b2. And as the defendant concedes elsewhere in his brief, there's actually out-of-circuit cases that have ruled against his interpretation. So even if we accept the defendant's invitation to apply something analogous to a plain error standard of review, there's no plain error here. There is no clear or obvious error. In addition, Your Honor, the defendant also correctly points out that the government here did miscalculate the criminal history category. But as I think the court already acknowledged, well, first I should say, this court has said that a mutual mistake regarding the guidelines calculation is not a basis for invalidating an appeal waiver. And as this court acknowledged as well, there was a very express provision in this plea agreement, not only warning generally that any guidelines calculation would not be binding, but also on top of that, expressly warning that it was impossible to fully calculate the criminal history category until the probation office had conducted a full investigation, which, of course, by that point it had not done. And I think the final reason that the defendant has pointed to, at least in his brief, is this claim that there's a public interest in interpreting this guideline so as to provide guidance for future cases. I think if that alone were enough to void or otherwise evade an appeal waiver, it would be an exception that swallows the rule. Effectively, all it would do would encourage appellants to try to frame any type of guidelines dispute at the highest possible level of generality. Is there any difference between a misapplication, simple misapplication, and misinterpretation of a guideline? There could be in some cases, Your Honor. There could be some situations where it's purely a question of interpretation. I think this is sort of a mixed scenario where really what we're asking is whether or not it applies to a particular state sentencing regime. But even there, I would note, Your Honor, if the court's concern is that this is going to be a recurring issue, there's no indication that this is something that's going to occur with any frequency in this circuit, particularly given that we're dealing with a state that is Pennsylvania that falls outside of the circuit. So I think any public interest in resolving how 4A1.2b2 applies to Pennsylvania here is probably fairly de minimis under the circumstances. Your Honor, unless the court has any further questions, I'm happy to address any other issues. Otherwise, I'll rest on my brief. Thank you. We'll hear rebuttal. Thank you, Your Honor. I just wanted to quickly touch on two or three points that the government made. First, with respect to the appeal waiver, the government sort of suggested that this would just give it a wrong incentive for people to be filing appeals and hopefully an Anders brief might reveal something. But the Supreme Court held in Garza v. Idaho that notwithstanding the name appeal waiver, the waiver does not actually bar appeals. In fact, it's structural error and error pro se for the attorney not to at least file the notice of appeal because only particular claims are barred. In fact, Congress created the right to a direct appeal of a criminal conviction all the way back on March 3, 1891. If you want the citation, it's 26 Stat 826. I looked it up. There had already been a right to appeal of a capital conviction. This extended it to everyone. And when Gideon was decided in 1963, establishing a right to court-appointed counsel, on the very same day, the Supreme Court decided Douglas v. California, making it clear that this also extended to the right to the first appeal because it was essential in considering the criminal justice that you at least have the opportunity to have that appeal filed and to maybe have an Anders brief and whatever. So this is not something that we should deter, as the government suggests. Even if it's just going to be an Anders brief, an essential part of the system here. Secondly, the government suggests that this might have negative consequences for the government and in terms of entering into pleas at all. But as I noted in the reply brief, as I cited those statistics, the empirical data actually shows just the opposite, that in these circuits that recognize this miscarriage of justice exception, the rate of people, of the government and defendants entering into plea agreements is as great or higher than in the Second Circuit, which makes sense because defendants knowing that they at least have some version of a safety net are going to be less necessary to insist on going to trial. Turning to the merits of the criminal history category, the government is concerned and I know Your Honor asked the question about what's application versus interpretation and the government suggests, well, attorneys will be fudging this all along. Respectfully, Your Honor, this court is intelligent enough to be able to know and to determine between what is a core question about whether this needs to be interpreted essentially functionally or whether we are only going to look specifically at the language that a state ideocratically uses versus just the application of a settled guideline in a particular case. This court can differentiate between those. I don't see that parade of horribles that the government sees. And secondly, the government tries to minimize the difference between like two points and 19 points, but it's a huge difference for anyone. Again, if part of our concern is that we actually want defendants to be able to negotiate fairly and enter into agreements, the expectations of the parties when they're first thinking that this is going to be category two and then, I mean, 19 is extraordinarily difficult to get in any circumstance. I know I'm over my time and this is a bit of an aside here, but part of the paradox of criminal history and this goes a little bit to Judge Lynch's concurrence in the Valente case, but to an even greater extent, is that if you're a really bad person, you're a really bad criminal, you rarely get more than three criminal history points if that, because you've already gotten such a long sentence. To get a sentence as high, even in the teens, you basically need to have a substance abuse and or mental health issue in which you are committing a number of relatively smaller things and not being incapacitated for so long that you can't keep on doing them. So it's not really relevant. You're really getting these situations whereas Judge Lynch so, I think, put it so well, these are people who are more ill than evil. If you don't have any more questions for me, do either of you? Judge Cabranes? Thank you for your argument. Thank you very much. Thank you. We will take the matter under submission. Thank you.